**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| **PRIESTLEY FAUCETT, on behalf of himself and others similarly situated,** | : : : : | |
| | : | **COLLECTIVE ACTION** |
| **Plaintiff,** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **AMAZON.COM, LLC,** | : | |
| **AMAZON LOGISTICS, INC., and** | : | |
| **SHEARD-LOMAN TRANSPORT, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Priestley Faucett ("Plaintiff") through his undersigned counsel, individually, and on behalf of all persons similarly situated, files this Collective Action Complaint ("Complaint") against Defendants Amazon.com, LLC, Amazon Logistics, Inc., and Sheard-Loman Transport, LLC (collectively, "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1.       This case is about Defendants Amazon.com, LLC, Amazon Logistics, Inc. (together "Amazon")'s unlawful scheme to attempt to avoid responsibility for paying its Delivery Associates in accordance with federal wage and hour laws by attempting to contract out that responsibility to third-party Delivery Service Providers, such as Defendant Sheard-Loman Transport, LLC ("Sheard-Loman").

2.       While Amazon controls the work activities, conditions and management of the

Delivery Associates, and tracks each package that is delivered by its Delivery Associates using Amazon's sophisticated "Rabbit" technology, it denies that it is a joint employer of Plaintiff and Delivery Associates.

3.　　Delivery Associates who deliver Amazon's packages but are paid through Defendant Sheard-Loman are paid a day rate and are not paid for all time worked, including overtime that is required to deliver hundreds of Amazon packages each day.

## JURISDICTION AND VENUE

4.　　Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.　　Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and conduct business in this District.

## PARTIES

6.　　Plaintiff Priestley Faucett is a citizen of Louisiana and resides in Baton Rouge, Louisiana. Plaintiff has worked for Defendants as a Delivery Associate in Louisiana from October 2018 to the present. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented to be a plaintiff in this action. *See* Ex. A.

7.　　Defendant Amazon.com, LLC is a limited liability company with principal offices in Seattle, Washington, which operates throughout the United States, including this Judicial District.

8.　　Defendant Amazon Logistics, Inc. is a corporation with principal offices in Seattle, Washington, which operates throughout the United States, including this Judicial District.

9.　　Defendant Sheard-Loman Transport, LLC ("Sheard-Loman") is a limited liability company organized under the laws of Illinois with principal offices in Chicago, Illinois. Sheard-Loman provides Delivery Associates to Amazon as a Delivery Service Provider.

10.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

11.     During times relevant, Plaintiff is an employee of Defendants and is covered by the FLSA.

12.     Defendants are employers covered by the FLSA.

13.     Defendants employ individuals, including Delivery Associates, in Illinois, Maryland, and Louisiana, as well as potentially other states.

14.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

15.     Defendants' annual gross sales exceed $500,000.

## COLLECTIVE DEFINITION

16.     Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following class:

> All current and former Delivery Associates who were paid by Defendant Sheard-Loman Transport, LLC to deliver packages for Amazon in the United States during the applicable limitations period (the "FLSA Collective").

17.     Plaintiff reserves the right to redefine the FLSA Collective prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers

18.     At all relevant times, Amazon has been affiliated with and/or operating with Sheard-Loman with respect to the Plaintiff and other similarly situated employees such that Amazon, on

the one hand, and Sheard-Loman, on the other, are the "joint employers" of the Plaintiff and other similarly situated employees.

19.     Sheard-Loman operates a carrier and logistics business in providing vehicles and drivers to deliver goods on behalf of Defendant Amazon.com and its affiliates. The goods are purchased by customers using Defendant Amazon.com, LLC's digital platform (the Amazon.com website).

20.     Amazon.com, LLC is an e-commerce company and one of the largest – if not the largest – internet retailers in the world, operating the website www.amazon.com. As of June 6, 2018, *Forbes* estimated the net worth of Amazon.com to be as much as $777.8 billion.

21.     Amazon Logistics, Inc. is a subsidiary of Defendant Amazon.com, LLC (together, "Amazon"), which advertises for and provides Delivery Associates for Amazon.com deliveries. Amazon Logistics, Inc. works with delivery providers ("Delivery Service Providers") to deliver packages from a central location to an Amazon.com customer.

22.     Amazon provides Delivery Service Providers, like Sheard-Loman, with exclusive deals on Amazon-branded vans, comprehensive insurance and other services.  Amazon Logistics, Getting Started <https://logistics.amazon.com/marketing/getting-started> (last visited Nov. 21, 2018). Amazon also provides access to vehicle maintenance, fuel program, professional uniforms, recruitment tools, payroll, tax, and accounting services, health and employees benefits, and legal support.

23.     Amazon does not require their Delivery Service Providers to have any logistics experience. In part, because Amazon provides technological and logistical expertise to the Delivery Service Provider.

24.     Delivery Service Provider startup costs start as low as $10,000.00 because Amazon

provides "…exclusive discounts on a suite of assets and services…" Amazon Logistics, Brochure, The Opportunity to Lead <https://d3a8hw3k243rpe.cloudfront.net/static-assets/Download_Brochure.pdf> (last visited Nov. 21, 2018).

25.     Amazon provides consistent coaching and support, an operation manual, driver assistance, and a dedicated account manager to each Delivery Service Provider.

26.     Delivery Service Providers also interact on a daily basis with Amazon' account manager, on-road assistance team and Amazon delivery station personnel.

27.     Most Delivery Service Providers work exclusively delivering Amazon packages.

28.     Sheard-Loman is a Delivery Service Provider for Amazon.

29.     Sheard-Loman provides Delivery Associates to deliver Amazon's packages.

30.     The principals of the Delivery Service Providers, such as Sheard-Loman, are required to undergo three-week hands-on training, including but not limited to education on the Amazon-provided delivery equipment, the daily processes at an Amazon delivery facility, and assist in sorting and loading packages.

31.     Delivery Service Providers are given access to Amazon's technology training resources, videos, and delivery data.

32.     Amazon also supplies Delivery Service Providers, such as Sheard-Loman, with business tools to assist with planning, daily operations, routing guidance, and customer service.

33.     Amazon pays Delivery Service Providers, including Sheard-Loman, pursuant to its standard Delivery Provider Terms of Service.

34.     While Delivery Service Providers pay the Delivery Associates from the amounts Amazon pays them, Amazon has both influence and control over how Delivery Associates are paid. For example, based on a recent news report of a "leaked internal email," Amazon is in the process

of "making major changes to how some delivery drivers are paid to 'enable transparency and accuracy of pay'," including "prohibit[ing] [Delivery Service Providers] from paying drivers a flat daily rate." *See* Hayley Peterson, *Leaked email reveals Amazon is changing how delivery drivers are paid following reports of missing wages*, BUSINESS INSIDER, Oct. 2, 2018, https://www.businessinsider.com/amazon-changes-delivery-pay-practices-following-missing-wage-reports-2018-10.

35.     Amazon supervises and controls the work activities, work schedules, conditions and management of Delivery Associates, such as Plaintiff.

36.     Sheard-Loman's Baton Rouge, Louisiana location is located within one of Defendant Amazon.com, LLC's fulfillment centers, which is controlled and operated by Amazon.

37.     On information and belief, Sheard-Loman's Illinois (Champaign, Chicago, Morton Grove, and Oak Park) and Maryland (Hanover) locations are also located within one of Amazon.com, LLC's fulfillment centers, which are controlled and operated by Amazon.

38.     Delivery Associates undergo mandatory training by Amazon through what is also known as Amazon's "Delivery Associate School." Plaintiff's training with Amazon took three days.

39.     The mandatory training, conducted by Amazon, covers Amazon's policies and procedures, including but not limited to: how to scan a package; how to use Amazon's handheld GPS-tracking device, known as a "Rabbit"; and how to drop packages off in compliance with Amazon's policies, procedures and concession rates (the failure to properly deliver a package).

40.     Amazon, through its Coretex system, tracks and monitors Delivery Associates' job performance. Every day, Amazon sends an email documenting each Delivery Associate's job performance.

41. On information and belief, Amazon disciplines Delivery Associates for violations of their policies and procedures.

42. Throughout their employment with Defendants, Delivery Associates are subject to additional training by Amazon in complying with its operational procedures and in meeting its work expectations.

43. If a Delivery Associate fails to meet Amazon's expectations, they are terminated.

44. As required by Amazon, Sheard-Loman provides Delivery Associates, such as the Plaintiff and other Delivery Associates, with a vehicle.

45. While the vehicles used by Delivery Associates are provided by Sheard-Loman, those vehicles must adhere to Amazon's requirements. Vehicles and must be "cargo vans with at least 300 cubic feet of cargo capacity." Amazon Logistics, Inc., Frequently Asked Questions, Requirements <https://logistics.amazon.com/> (last visited Nov. 22, 2017).

46. The vehicles are branded with Amazon' logo (as seen below).



47. The vehicles provided to Delivery Associates by Sheard-Loman weigh less than 10,000 pounds.

48.     Delivery Associates are provided with and are required to use an Amazon.com "Rabbit," a handheld device that provides the addresses of Amazon.com customers. The "Rabbit" is also used for navigation assistance, package scanning, and as a phone. The "Rabbit" also allows Amazon to contact and track a Delivery Associate's movement and work progress.

49.     Amazon has direct access to the "Rabbit" devices, which are given to and used by each Delivery Associate.

50.     Amazon sets the delivery route that the Delivery Associate will complete.

51.     Amazon assigns and provides routes to Delivery Service Providers, including Sheard-Loman.

52.     Amazon also dictates the hours of delivery in which a Delivery Associate may deliver a package. For example, Delivery Associates in Amazon' Baton Rouge, Louisiana facility are directed to not deliver packages after 9:00 p.m.

## The Nature of Plaintiff and Delivery Associates' Work for Defendants

53.     Plaintiff has been employed as a Delivery Associate since October 2018 in Defendants' Baton Rouge, Louisiana location, making deliveries of packages on behalf of Amazon.

54.     Plaintiff and other Delivery Associates are required to check in with Amazon employees when they arrive and leave the facility.

55.     Plaintiff and other Collective Members are regularly scheduled to work five (5) to six (6) days per week, with shifts that are scheduled for ten (10) hours.

56.     Although shifts are scheduled for ten (10) hours per day, all of the work related activities that Plaintiff and Delivery Associates are required to and do perform often takes ten or more hours per day to complete.

57.     Plaintiff regularly works more than forty (40) hours a week.  Plaintiff observes that

other Collective Members routinely work similar hours.

58.     On average, Plaintiff drives between approximately 50-161 miles per shift delivering packages. Plaintiff observed that other Collective Members routinely drive a similar number of miles to deliver packages.

59.     On average, Plaintiff delivers between approximately 68-159 Amazon packages per shift. Plaintiff observed that other Collective Members routinely deliver a similar number of packages.

60.     Even after Plaintiff and other Collective Members finish delivering their assigned packages, Defendants require them to "rescue" other Delivery Associates by going to meet another Delivery Associate in the field to deliver some of their packages. Plaintiff has been directed to "rescue" other Delivery Associates and has observed other Collectives Members rescue other Delivery Associates.

61.     Plaintiff is not provided lunch breaks. Accordingly, Plaintiff routinely works through his lunch without extra pay and he is unable to take short breaks due to the high volume of deliveries. Plaintiff observes other Collective Members routinely work similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

### Delivery Associates Are Paid on a Day Rate Basis

62.     Delivery Associates are paid a flat day rate regardless of how many hours they actually work.

63.     Plaintiff is paid a flat rate of $135.00 per day.

64.     Plaintiff observed other Delivery Associates are also paid a day rate.

65.     Sheard-Loman advertises for "Amazon Delivery Drivers," and states that that it

offers pay of a fixed rate "daily, upon completion of the route." *See* https://www.linkedin.com/jobs/view/amazon-delivery-driver-at-sheard-loman-transport-llc-hanover-957466229/ (last accessed December 5, 2018).

66.     Defendants also pay Plaintiff and Collective Members other forms of compensation for services, including without limitation, non-discretionary bonuses.

67.     Plaintiff and other Delivery Associates regularly work more than 40 hours per week.

68.     Plaintiff and other Delivery Associates regularly work five (5) to six (6) days per week.

69.     Defendants do not keep track of the actual number of hours that Plaintiff and Delivery Associates work.

70.     Defendants do not pay Plaintiff or Delivery Associates overtime for all hours worked in excess of forty in a workweek.

71.     Defendants pay their Delivery Associates, such Plaintiff and other Collective Members, pursuant to the same unlawful day rate pay policy, without paying overtime for work performed amounting to more than forty hours per week.

72.     Defendants pay Plaintiff and Collective Members their flat sum for days that they work regardless of the number of hours worked, and do not pay additional overtime compensation. *See Hickman v. TL Transportation LLC*, 317 F. Supp. 3d 890 (E.D. Pa. 2018) (granting summary judgment to the plaintiff in holding that a similar day rate scheme by a Delivery Service Provider violated the FLSA).

73.     Plaintiff and the FLSA Collective compensated on a daily rate pay basis, and are not paid overtime as required by law.

## Defendants' Failure to Properly Pay Delivery Associates Is Willful

74.     Defendants' actions in violation of the FLSA are made willfully in an effort to avoid liability under the FLSA.

75.     Amazon relies on DSPs, such as Sheard-Loman for the essential services of getting its goods from its warehouses to its customer's doors as quickly as possible, yet Amazon attempts to shield itself from liability for wage and hour violations by using thinly capitalized companies, such as Sheard-Loman, to provide the employees who perform this work.

76.     Amazon attempts to hide behind these DSPs and use a joint employer defense rather than making sure the employees who perform these services are compensated in accordance with the law.

77.     Notwithstanding that it is plainly unlawful to pay a non-exempt employee a day rate without overtime compensation, and despite the fact that another federal court has found that such a pay scheme paid by a DSP of Amazon is unlawful, Defendants continue to pay Delivery Associates in such an unlawful manner.  *See Hickman v. TL Transportation LLC*, 317 F. Supp. 3d 890 (E.D. Pa. 2018).

78.     In addition, despite tracking Amazon's packages to the second, Defendants have failed to make, keep and preserve records with respect to the Plaintiff and other members of the FLSA Collective sufficient to determine their lawful wages, actual hours worked and other conditions of employment as required by federal and state law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

79.     Even though the FLSA entitles day-rate and hourly employees to overtime premium

11

compensation for hours worked over 40 per week, Defendants do not pay their Delivery Associates, such as the Plaintiff, any extra overtime premium compensation for their overtime hours worked.

80.     Defendants knew or absent their own recklessness should have known that the Plaintiff and Collective Members were entitled to such overtime premiums.

81.     By failing to pay the overtime premium to the Plaintiff and other Delivery Associates, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

82.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

83.     Plaintiff desires to pursue his FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

84.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

85.     Specifically, Defendants failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

86.     The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any

payroll companies Defendants use.

87.     Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the FLSA Collective)**

88.     All previous paragraphs are incorporated as though fully set forth herein.

89.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed.  *See* 29 U.S.C. § 207(a)(1).

90.     Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

91.     At all relevant times, each of the Defendants were, and continue to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

92.     During all relevant times, the members of FLSA Collective, including the Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

93.     Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

94.     Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

95.     Defendants' compensation scheme applicable to the Plaintiff and the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

96.     Defendants knowingly failed to compensate the Plaintiff and the FLSA Collective at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week.

97.     Defendants also failed to create, keep and preserve records with respect to work performed by the Plaintiff and the FLSA Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

98.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of themselves and all others similarly situated:

a.     An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c.     Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d.     Liquidated damages to the fullest extent permitted under the law;

e.     Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

f.    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all issues of fact.

Dated: December 7, 2018                    Respectfully submitted,


/s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
sschalman-bergen@bm.net
crodriguez@bm.net

Ryan Allen Hancock, *pro hac vice forthcoming*
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Tel.: (215) 656-3600
Fax: (215) 567-2310
rhancock@wwdlaw.com

John Bielski, Illinois ID No. 86790
WILLIG, WILLIAMS & DAVIDSON
77 W. Washington St., Suite 2120
Chicago, Illinois 60602
jbielski@wwdlaw.com

*Attorneys for the Plaintiff and the*
*Proposed FLSA Collective*